## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN

| | |
|---|---|
| JENNIFER DUNCAN, individually and on behalf of all others similarly situated.<br><br>Plaintiff,<br><br>v.<br><br><br>THE UNITED STATES VIRGIN ISLANDS, an unincorporated territory of the United States, THE HONORABLE KENNETH MAPP, Governor of the United States Virgin Islands, MARVIN PICKERING, the Director of the Virgin Islands Bureau of Internal Revenue, and VALDAMIER COLLENS, the Commissioner of the Department of Finance of the United States Virgin Islands.<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT** FOR RECOVERY OF UNITED STATES VIRGIN ISLANDS INCOME TAX REFUNDS, WRIT OF MANDAMUS, DECLARATORY JUDGMENT & PERMANENT INJUNCTION<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

PLAINTIFF Jennifer Duncan ("Plaintiff"), through counsel, alleges as follows:

### NATURE OF THE CASE & INTRODUCTION

1. The government of the United States Virgin Islands (the "USVI"), through elected and appointed officials in its executive and legislative branches, acknowledges that it owes USVI taxpayers income tax refunds for past tax years.

2. The USVI estimates that it owes at least $97,849,992.74 in outstanding income tax refunds for the tax years 2007 through 2017, inclusive.

3. On August 24, 2017, Taxpayers for Accountability in Government, LLC ("TAG"), a limited liability company organized in the USVI issued a public records request to the Defendants in this matter, requesting, *inter alia*, that the Defendants provide "[a]ll

documents reflecting the total amount of tax refunds owed by the BIR cumulatively for the

past ten years." In response, the Defendants provided this chart:

Refunds Owed by Tax Year

| $ | 70,697.51 | 2007 |
|---|---|---|
| $ | 1,183,998.25 | 2008 |
| $ | 249,262.47 | 2009 |
| $ | 779,525.07 | 2010 |
| $ | 2,147,324.52 | 2011 |
| $ | 1,604,575.21 | 2012 |
| $ | 2,005,856.49 | 2013 |
| $ | 4,757,165.12 | 2014 |
| $ | 16,394,851.89 | 2015 |
| $ | 50,945,193.32 | 2016 |
| $ | 17,711,542.89 | 2017 |
| $ | 97,849,992.74 | |

4.  As of March 16, 2018, the USVI estimates that 19,653 income tax returns claiming refunds
    have not had the refunds claimed paid.

5.  On information and belief, the March 16, 2018 estimates do not include an unknown
    number of income tax returns which have not been processed by the Virgin Islands Bureau
    of Internal Revenue (the "BIR").

6.  Under local law (33 V.I.C. § 1102(b)), the USVI is required to set aside 10% of all income
    taxes collected for the purpose of paying income tax refunds (the "set aside account").

7.  On February of 2018 a case was brought styled as *TAXPAYERS FOR ACCOUNTABILITY
    IN GOVERNMENT, LLC v. MAPP, et al.,* case no. ST-18-cv-91 (V.I. Superior Ct.).

8.  In case no. ST-18-cv-91 MAPP and the other governmental defendants provided their Rule
    26 disclosures to the plaintiff (Taxpayers for Accountability in Government), which

included a chart titled "Government of the Virgin Islands, Analysis of Income Tax Set Aside, For the Periods Covering Fiscal Years 2011-2017."

9. The chart is reproduced in full below:

**Government of the Virgin Islands**
**Analysis of Income Tax Set Aside**
**For the Periods Covering Fiscal Years 2011 - 2017**

| Fiscal Year | Individual & Corporate Income Taxes | 10% Set Aside | Actual Set Aside | 10% Set Aside vs. Actual Set Aside | Actual Taxes Paid | Taxes Paid vs. 10% Set Aside |
|---|---|---|---|---|---|---|
| 2011 | 398,022,364 | 39,802,236 | | (39,802,236) | 94,793,513 | 54,991,277 |
| 2012 | 379,597,385 | 37,959,739 | - | (37,959,739) | 58,031,045 | 20,071,306 |
| 2013 | 389,913,837 | 38,991,384 | 35,200,000 | (3,791,384) | 70,531,619 | 31,540,235 |
| 2014 | 425,806,247 | 42,580,625 | 36,805,806 | (5,774,819) | 68,668,547 | 26,087,922 |
| 2015 | 434,682,894 | 43,468,289 | 24,000,000 | (19,468,289) | 64,656,062 | 21,187,773 |
| 2016 | 406,298,955 | 40,629,896 | 32,800,000 | (7,829,896) | 62,362,439 | 21,732,544 |
| 2017 | 389,693,609 | 38,969,361 | | (38,969,361) | 22,555,998 | (16,413,362) |
| | $ 2,824,015,291 | 282,401,529.10 | 128,805,805.96 | $ (153,595,723) | $ 441,599,223 | $ 159,197,694 |

10. During the income tax years 2011 through 2017, inclusive, the USVI collected $2,824,015,291.00 in income taxes.

11. During the income tax years 2011 through 2017, inclusive, the USVI set aside $128,805,805.96, leaving the income tax refund account with a $153,595,723.00 deficit. During 2017, the USVI contributed no money to the set aside account.

12. On April 18, 2018, COLLENS was deposed in the case styled *Perkins v. The United States Virgin Islands, et al.,* case no. 3:17-cv-25 (DVI).

13. At his April 18th deposition, COLLENS testified as follows:

//

```
 1              Are you familiar with Title 33 of the
 2    Virgin Islands Code, Section 1102(b)?
 3         A    Sounds familiar.
 4         Q    Are you familiar with the requirement --
 5    the 10 percent requirement of the government having
 6    maintained a reserve account of the 10% for income
 7    tax refunds?
 8         A    Yes.
 9         Q    And what's your understanding of that
10    requirement?
11         A    My understanding, looking at it over —
12    I'd looked at this over some time now — is that
13    while we typically pay much more in excess of the
14    10%, the actual process of setting aside the
15    10 percent, we don't quite always get there.  We are
16    somewhere — I think we average somewhere between
17    6 to 8 percent that we actually physically set
18    aside.  But the bottom line is, you know, every --
19    for the years that I've looked at over the last five
20    years or so, we've paid out way more in excess than
21    10%, the 10% set aside.
```

14. Indeed, COLLENS testified that:

20      Q    Is it the position of the Department of

21   Finance that as long as the Department of Finance

22   pays more than 10% of the total tax collected in

23   each year's refunds, that the Department of Finance

24   has complied with the requirements of 33 Virgin

25   Islands Code, Section 1102(b)?


1      A    No.  I think we could do a better job of

2   setting aside during the year, so I don't think that

3   we have actually complied, and I think I made that

4   very clear in my communication here.

5          So the answer to your question is, I think we

6   could, you know, do a lot better.  But given the — I

7   don't know what all what went on in all of these years

8   to not allow it to happen.  But, anyway, let me stick

9   to your question.  No, I don't think that we were in

10   full compliance.

15. Federal law, including the Revised Organic Act, allows USVI taxpayers to sue the USVI for their income tax refunds.

16. USVI law allows USVI taxpayers to sue the USVI to demand that the USVI properly fund its income tax refund account.

17. Plaintiff, on behalf of herself and the proposed Class defined below, seek payment of the income tax refunds owed by the USVI to its taxpayers.

**JURISDICTION, VENUE & DEMAND FOR JURY TRIAL**

18. This Court has jurisdiction over this action pursuant to 48 U.S.C. § 1612, 28 U.S.C. §§ 1331, 1367, 1343, and 2201. This Court has personal jurisdiction pursuant to 18 U.S.C. §1965(b) over all of the Defendants by virtue of at least one Defendant residing on St. Thomas, Virgin Islands.

19. Venue is proper under 28 U.S.C. § 1391 in this Court as the Defendants reside in this venue, and this is a class action suit against the United States Virgin Islands.

20. A trial by jury is demanded pursuant to Fed. R. Civ. P. 38.

**THE PARTIES**

21. The government of the United States Virgin Islands was created through the enactment of the Revised Organic Act (48 U.S.C. § 1541 *et. seq.*). The government of the United States Virgin Islands is the entity to whom income taxes are paid by United States Virgin Islands taxpayers pursuant to the Naval Services Appropriation Act of 1921 (48 U.S.C. § 1397).

22. The Honorable Kenneth Mapp ("MAPP") is the Governor of the Virgin Islands.

23. Director Marvin Pickering ("PICKERING") is the Director of the Bureau of Internal Revenue (the "BIR").

24. Commissioner Valdamier A. Collens ("COLLENS") is the Commissioner of the Department of Finance (the "DOF").

25. Plaintiff is a United States citizen. Plaintiff is over the age of eighteen (18) and is a United States Virgin Islands taxpayer. She filed a timely and valid annual income tax return with the BIR for the income tax year ending December 31, 2016 (the "2016 Tax Year" and "Plaintiff's 2016 Income Tax Return"). Plaintiff claimed a refund for overpayment of taxes

on the Plaintiff's 2016 Income Tax Return. Defendants have not paid Plaintiff the refund claimed on Plaintiff's 2016 Income Tax Return.

## THE CLASS

26. Plaintiff brings this Complaint individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

27. The class Plaintiffs represent (the "Class") is initially defined as:

> All persons and entities who: (a) have filed a timely claim for refund of an overpayment of the United States Virgin Islands Territorial Income Tax for any tax year from at least 2003 to the present, (b) have not been given by the government of the United States Virgin Islands or the BIR, via certified or registered mail, a timely notice of disallowance of such claims, and (c) have not been paid such refunds by the government of the United States Virgin Islands.

28. Excluded from the proposed Class is any Judge to whom this case is assigned as well as his or her immediate family.

29. Numerosity of the Class – Fed. R. Civ. P. 23(a)(1).

   a. According to the government of the United States Virgin Islands, as of March 16, 2018, the government of the United States Virgin Islands has 18,164 income tax returns claiming refunds which are unpaid totaling $37,083,8954.10 for the 2016 Tax Year.

   b. According to the government of the United States Virgin Islands, the government of the United States Virgin Islands owes $97,849,992.74 in income tax refunds for all years since 2007.

   c. According to the government of the United States Virgin Islands, the government of the United States Virgin Islands, the government of the United States Virgin Islands set aside no money for the payment of income tax refunds during 2017.

Therefore, the United States Virgin Islands will be unable to pay, or otherwise fail to pay, some or all of the income refunds claimed for the income tax year ending December 31, 2017 (the "2017 Tax Year").

    d. The Class that Plaintiff represents is therefore so numerous such that joinder of each member of the Class is impracticable.

30. <u>Existence and Predominance of Common Questions - Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>. Questions of law and fact common to the Class predominate over any questions affecting only individual Class members, including whether the government of the United States Virgin Islands can decline or postpone its nondiscretionary duty to promptly pay income tax refunds to those who have filed timely and valid tax returns and refund claims.

31. <u>Typicality - Fed. R. Civ. P. 23(a)(3)</u>. The claims of Plaintiff are typical of the claims of the Class members because, among other things, Plaintiff filed a timely and valid income tax return claiming a refund during the Class period and has not received that income tax refund.

32. <u>Adequacy of Representation - Fed. R. Civ. P. 23(a)(4)</u>. Plaintiff will fairly and adequately protect the interests of the Class because her interests are aligned with those of the Class members they seek to represent. Plaintiffs have retained counsel competent and experienced in complex tax litigation in and related to the United States Virgin Islands, and intend to prosecute this action vigorously on Class members' behalf.

33. <u>Superiority- Fed. R. Civ. P. 23(b)(3)</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, and individual joinder of all members of the Class is impracticable. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise

present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and could cause the court to hear virtually identical lawsuits. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court, protects the rights of each Class member and maximizes recovery to them.

34. In the alternative, the Class may be certified under the provisions of Fed. R. Civ. P. 23(b)(l) and/or 23(b)(2) and/or 23(c)(4) because:

    a.   The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for the Defendants;

    b.   The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c.   Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole; and

    d.   Some or all of the particular issues identified above are such that it is appropriate to maintain this case as a class action.

## CLAIMS

### *Claim 1 by Plaintiff on Behalf of the Class against the United States Virgin Islands (Suit for Refund)*

35. Paragraphs 1 – 34 are incorporated herein by reference.

36. The Naval Services Appropriation Act of 1921 (48 U.S.C. § 1397) specifically provides for an income taxation scheme in the United States Virgin Islands which is known as the "Mirror Code". Under the Mirror Code, the income tax laws in effect in the United States are the income tax laws government the United States Virgin Islands territorial income tax system.

37. Taxpayers in the United States Virgin Islands consist of United States Virgin Islands residents, who pay income tax on their worldwide income to the United States Virgin Islands, and citizens and permanent residents of the United States who have income sourced to the United States Virgin Islands or effectively connected with a United States Virgin Islands trade or business.

38. By the government's own admissions, it owes $97,849,992.74 in income tax refunds for tax years since 2007.

39. Upon information and belief, the government has not paid certain income tax refunds owed to United States Virgin Islands taxpayers for tax years dating back at least to 2003. Upon the opportunity for further discovery, it may be revealed that the United States Virgin Islands has not paid income tax refunds for periods preceding 2003.

40. Most of the money owed as income tax refunds is comprised of refunds that correspond to valid and timely filed income tax returns and refund claims.

41. Plaintiff and the Class have satisfied all prerequisites to filing this suit, including duly and timely filing the requisite claims for refunds or credits, and are entitled to be paid such refunds that are owed them up to the current tax period, and are entitled to maintain this civil suit against the United States Virgin Islands for the recovery of such refunds, pursuant to, *inter alia*, 26 U.S.C. § 7422; 48 U.S.C. § 1612; 26 U.S.C. § 6532; and 26 U.S.C. § 6511.

42. Defendant's failure to maintain the separate income tax refund account as required under 33 V.I.C. § 1102(b) has contributed the Defendant's failure to pay income tax refunds as those refunds become due.

43. Plaintiff and the Class have suffered and will continue to suffer economic hardship from Defendant's failure to promptly pay the refunds due Plaintiff and the Class.

44. Plaintiff has incurred, and will continue to incur, expenses for costs and attorneys' fees necessary for the investigation, institution, and prosecution of this action. Such fees and expenditures will result in benefits to all members of the Class Plaintiff represents.

### *Claim 2 by Plaintiff Individually against Pickering and Collens in their official capacities (Petition for Writ of Mandamus)*

45. Plaintiff re-alleges paragraphs 1 – 34 and 36 – 44 of this Complaint.

46. PICKERING is required under 33 V.I.C. § 1102(b), as part of his duties as Director of the BIR, to maintain an account setting aside 10% of income taxes collected by the BIR.

47. On information and belief, the DOF in fact maintains this account, and the final decision as to whether this refund set aside account is funded is COLLENS's.

48. On information and belief, this refund set aside account is maintained as a separate bank account by the DOF.

49. PICKERING and COLLENS have failed to set aside the required 10% of income taxes collected, and the refund set aside account is underfunded by $153,595,723.00.

50. The Defendant's inability to pay Plaintiff's income tax refunded is directly caused by this refund set aside account being underfunded.

51. Plaintiff therefore requests that this Court issue a Writ of Mandamus requiring that PICKERING and COLLENS set aside 10% of the income taxes collected for the purpose of paying income tax refunds.

***Claim 3 by Plaintiff Individually and as Class Representative against Pickering, Mapp and Collens in their Official Capacities***
***(Complaint for Declaratory Relief & a Permanent Injunction)***

52. Plaintiff re-alleges paragraph 1-34, 36-44, and 46-51 of this Complaint.

53. On April 10, 2017, the St. Thomas Source issued part 1 of a series on the USVI budget crisis.  Exhibit 1.[1]

54. The April 10th St. Thomas Source article reported that: "Along with this year's $110 million deficit, the USVI is facing ongoing structural deficits of around $170 million per year out of a locally funded budget of around $850 million. It has outstanding debt of more than $2 billion, not counting the debts of the government-owned Water and Power Authority, which is also struggling financially. It has a $3 billion unfunded pension liability with the pension system projecting it will cease being able to pay full pensions by 2023. And for the first time, after two rounds of ratings downgrades in less than a year, lenders have refused to buy V.I. government bonds, making it very difficult to smooth over the gaps." Exhibit 1.

55. The April 10th article also reported that: "Budget Director Nellon Bowry told senators in 2015 that deficits have plagued the government for at least the last 20 years. 'Left unattended, this annual deficit has morphed from a manageable $9.2 million as recently as FY 2006 to a fiscally frightening peak of $577.6 million in FY 2010. Accelerated first by the Great Recession of 2008 and later by the closing of Hovensa refinery, the accumulated General Fund deficiency for the five fiscal years between FY 2008 and FY 2013 totaled approximately $1.5 billion; an annual average of almost $300 million. The root causes of this structural imbalance have not been proactively addressed. Rather, the annual shortfalls

---

[1] *Available at* https://stthomassource.com/content/2017/04/10/the-v-i-budget-crisis-how-did-we-get-here-how-do-we-get-out/ (last accessed August 16, 2018).

have been financed by ad hoc combinations of inter-fund transfers and by formal and informal debt,' Bowry said in 2015." Exhibit 1.

56. The April 10th article also reported that: "But debts did not begin in 2006 and there have been large deficits before 2006 too. That increase was largely a continuation of a long-term trend. Debt also doubled in the previous eight years, from $530.5 million in 1998 to $1.1 billion in 2006." Exhibit 1.

57. The April 10th article also reported that then Governor deJongh "defended a plan for borrowing in his January 2010 State of the Territory Address, [deJongh] said the government had $234 million fewer dollars to spend over the previous fiscal year than the year before. 'To put this in perspective, $234 million is almost half of the cost of salaries and benefits of our government workers for a full year,' [deJongh] said." Exhibit 1.

58. The April 10th article also reported that "In May 2010, the news was not better and deJongh said in a radio address the government needs about $1.3 billion a year to function, but had collected only about $759 million – a half-billion dollar shortfall. [deJongh] said revenues – including taxes, fees and fund contributions were down 27 percent." Exhibit 1.

59. The April 10th article included the following chart:

//

//

//

//



60. On April 16, 2017, the St. Thomas Source issued part 2 of a series on the USVI budget crisis.  Exhibit 2.[2]

61. The April 16th article reported contained the following chart, which demonstrates that personal income tax income has been, and continues to be, the largest source of revenue for the USVI.

//

//

//

//

//

//

//

//

---

[2] *Available at* https://stthomassource.com/content/2017/04/16/the-v-i-budget-crisis-part-2-the-hovensa-effect/ (last accessed August 16, 2018).



62. On April 24, 2017, the St. Thomas Source issued part 3 of a series on the USVI budget crisis. Exhibit 3.[3]

63. The April 24th article reported that: "The USVI is also facing a $3 billion unfunded pension liability and a pension plan projected to cease being able to pay full pensions by 2023." Exhibit 3.

64. The April 24th article reported that: "For several years, GERS officials and outside analysts have projected it will sell all its assets and be unable to make full monthly pension payments by 2025 at the latest, possibly even a year or two sooner. If the government does not solve its deficit problem, any solutions that are enacted will fail as the government uses those funds for immediate needs." Exhibit 3.

---

[3] *Available at* https://stthomassource.com/content/2017/04/24/the-v-i-budget-crisis-part-3-the-gers-time-bomb/ (last accessed August 16, 2018).

65. The April 24th article also reported that: "The government stopped paying both employer and employee pension contributions in December, GERS Administrator Austin Nibbs told the GERS trustees March 1."  Exhibit 3.

66. To make matter worse, the April 24th article report that once the assets of GERS "is sold off, the pension payments are legally the responsibility of the V.I. government and will add $130 million or more to the annual budget deficit." Exhibit 3.

67. Indeed, the April 24th article reported that MAPP said "'There is no solution to the GERS financial condition if there is no solution to the government's fiscal situation,' MAPP said at an April 19 press conference on going after tax delinquents. If the government cannot fix its 'fiscal blight' it cannot fix GERS, [MAPP] said." Exhibit 3.

68. On May 1, 2017, the St. Thomas Source issued part 4 of a series on the USVI budget crisis. Exhibit 4.[4]

69. The May 1st article reported "what the USVI spends its budget on, large line items, 2004-2017" and included the following chart:

//

//

//

//

//

//

//

---

[4] *Available at* https://stthomassource.com/content/2017/05/01/the-v-i-budget-crisis-part-4-debt-or-spending-what-to-worry-about/  (last accessed August 16, 2018).



70. On December 25, 2017, the St. Thomas Source issued part 16 of a series on the USVI budget crisis. Exhibit 5.[5]

71. The December 25th article reported that: "Early in 2017, the U.S. Virgin Islands was facing massive structural deficits, fast-rising debt, multiple ratings downgrades, an inability to borrow and no clear path to solvency. Hurricanes Irma and Maria have made the situation

---

[5] *Available at* https://stthomassource.com/content/2017/12/25/the-v-i-budget-crisis-part-16-irma-and-maria-make-a-bad-situation-worse/ (last accessed August 16, 2018).

dramatically worse, with the V.I. government projecting a loss of $1.5 billion in revenues over the next three years."  Exhibit 5.

72. The December 25th article included a chart titled: "V.I. government primary revenue sources FY2011-2017 and projected 2018-2020":



73. The December 25th article reported that federal aid flowed into the Territory but "even with every dollar of assistance currently on the table, the economic blow to the territory is so severe that, even after adding $371 million in federal disaster loans, the central government is looking at a shortfall of at least $203 million and no plausible way to make up the difference." Exhibit 5.

74. The BIR is the executive agency of the USVI which is charged with enforcing the income tax laws of the USVI.

75. The DOF is the executive agency of the USVI which is charged with issuing payments on behalf of the USVI.

76. Under the Mirror Code, taxpayers in the USVI have a right to receive income tax refunds claimed on original filed tax returns within six months after such returns are filed unless the BIR has proposed an adjustment of such return.

77. PICKERING, MAPP and COLLENS have failed to make income tax refund payments to the members of the Class.

78. PICKERING, MAPP and COLLENS respective failures to make income tax refund payments to the members of the Class is, upon information and belief, based (at least in part) on the fact that the Defendants are using income tax overpayments from members of the class as a "bridge loan" to make up the above described budget shortfalls.

79. Indeed, based on upon the information reported by the St. Thomas source, *see* ¶¶ 52-72, *supra,* (a) The USVI is facing on-going budget deficits (b) The USVI debt in 2016 was more than double tax revenues plus rum matching funds (*see* paragraph 58 chart); (c) Personal income tax revenues are at least double the next largest revenue source (*see* paragraph 60 chart); (d) The GVI will be obligated to pay $130M in additional GERS payments, perhaps as soon as 2020; (e) If the GVI paid the $98M it owes in back taxes, such would be greater than the yearly budget for the majority of the largest governmental agencies (*see* paragraph 68 chart); (f) Post hurricanes Irma and Maria, the USVI projected revenue has been cut in half (*see* paragraph 71 chart); (g) Even with federal aid the USVI will still have a shortfall of over 200% of the outstanding income tax refunds that it admits that it owes.

80. PICKERING and COLLENS failed to contribute any funds to the refund set aside account during 2017.

81. These failures on behalf of PICKERING, MAPP and COLLENS were under color of territorial law, with each acting in their official capacity.

82. It is a certainty that PICKERING, MAPP and COLLENS will be unable to pay income tax refunds due to Plaintiff and other Class Members claimed on such individuals' 2017 income tax returns (and other income tax returns that have been filed and are past the six-month statutory period) because the Defendants are using class members' income tax refunds to bridge chronic budget shortfalls.

83. The Mirror Code is a "pay as you go" income tax system. USVI taxpayers are required to make estimated tax payments throughout the year. For statutory employees, this is accomplished through income tax withholding on wages paid to such employees. For self-employed individuals, this is accomplished through quarterly estimated tax payments.

84. Under the Mirror Code, a penalty may be assessed against any USVI taxpayer who fails to make estimated tax payments of at least 90% of his or her total income tax liability by the end of each year.

85. The Class members have in common that they were "over-withheld", i.e. all Class members paid more in estimated income tax payments than each Class member, in fact, owed in income tax liability.

86. The Mirror Code anticipates that Class members will be paid income tax refunds for such over withheld amounts within six months of the filing of each Class member's income tax return.

87. Excluded from the Class are individuals who were not "over-withheld" in a given tax year, i.e. individuals who paid in less than 100% of such person's overall income tax liability in

a given tax year. Such a person, by definition, will not be owed an income tax refund by the Defendants in a year in which such person is not over-withheld.

88. Therefore, two classes of people exist in the USVI: 1) the Class members, who are over withheld on their personal income taxes, and 2) those individuals who are not over withheld on their personal income taxes.  In other words, there are those that are owed an income tax refund by the USVI and those that do not.

89. The USVI uses income tax overpayments as bridge loans in which the lender (i.e. each Class member) had no choice but to make the loan.

90. The Equal Protection Clause of the 14th Amendment to the U.S. Constitution is made applicable to the USVI by the Revised Organic Act.

91. The Equal Protection Clause guarantees all persons subject to the jurisdiction of the United States equal protection of the laws.

92. Class members (i.e. those who have been over withheld on their personal income taxes and are still owed that overpayment) have been (and currently are) disproportionally (in comparison to those taxpayers who are not due an income tax refund) shouldering the burden of the USVI's financial woes in a manner that violates their rights for equal protection under the law in violation of the Equal Protection Clause of the 14th Amendment made applicable by the Revised Organic Act.

93. The Defendants have violated the Equal Protection Clause by forcing the Class members to loan money to the government of the USVI while allowing those who were not over withheld on their income taxes to avoid such loans.

94. 42 U.S.C. § 1983 allows the Plaintiff and the Class to sue for equitable relief for violations of the law by PICKERING, MAPP and COLLENS in their official capacity as officers of the USVI for violations of the Plaintiff and the Class's rights under law.

95. PICKERING, MAPP and COLLENS respective actions (individually and collectively) of not paying income tax refunds qualifies as arbitrary discrimination and enforcement of the income tax laws applicable in the Virgin Islands (i.e., the Mirror Code) through its improper execution.

96. This Court has the power to declare that the Defendants are in violation of the Mirror Code and the Revise Organic Act and are in violation of Section 1983 in light of their respective roles in administering the Mirror Code in a manner that violates the Equal Protection Clause.

97. Plaintiff and the class have no adequate remedy at law. Requiring taxpayers to bring tax refund suits every year offers no solution because the problem is systemic and cannot be addressed piecemeal. Instead, the type of overarching change that only permanent injunctive relief can provide is required.

98. This Court has the power and should enter a permanent injunction against the Defendants because the Class members are suffering irreparable injury, *viz.,* their rights under the Equal Protection Clause have been and currently are being violated.

## TOLLING

99. Any statute of limitations that might otherwise bar any Class member's claims is tolled by Defendant's failure to notify Plaintiff and members of the Class concerning the processing status of their tax returns and refund claims, and/or Defendant's concealment of any intent not to pay the income tax refunds owed to USVI taxpayers. Class members could not have

reasonably discovered Defendant's intent not to honor and/or act upon timely and valid income tax returns and refund claims, and this action is filed within the statutory period, if any, following the first date upon which Plaintiffs and the Class could reasonably have discovered that Defendant did not intend to timely process and pay Plaintiffs' and Class members' valid income tax refunds.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** Plaintiff, individually, and on behalf of the Class, prays that this Honorable Court:

1. Certify the proposed Class and appoint Plaintiffs and her counsel to represent the Class;

2. Enter judgment against Defendant in favor of the Plaintiff and the Class;

3. Adjudge, decree, and award Plaintiff and the Class all amounts duly owed by Defendant for all unpaid income tax refunds for the tax years within the Class period;

4. Enter a Writ of Mandamus requiring MAPP, PICKERING and COLLENS to comply with 33 V.I.C. § 1102(b) and set aside 10% of all income taxes collected by the Defendant in a separate account for the payment of income tax refunds;

5. Declare that MAPP, PICKERING and COLLENS have violated the Plaintiff's Class members' rights under the Equal Protection Clause.

6. Enter a Permanent Injunction requiring MAPP, PICKERING and COLLENS to pay income tax refunds claimed on individual tax returns within six months of the filing of that return unless the BIR proposes an adjustment to said return;

7. Award Plaintiff and the Class reasonable attorneys' fees and costs of suit, as well as pre-judgment and post-judgment interest as permitted by law; and

8. Grant such additional and further relief as the Court deems proper and just.

Respectfully submitted this 17th day of August, 2018.


By: /s/ Joseph A. Diruzzo       

Joseph A. DiRuzzo, III

VI Bar No. 1114

DiRuzzo & Company

401 East Las Olas Blvd., Suite 1400

Ft. Lauderdale, FL 33301

954.615.1676 (O)

954.827.0340 (f)

jd@diruzzolaw.com

By:/s/ Alex Golubitsky       

Alex Golubitsky

VI Bar No. 1269

6501 Red Hook Plaza

Suite 201

St. Thomas, VI 00802

206.271.7417 (O)

866.301.2038 (F)

alex@mrrpc.net